UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

ARTHUR COFFEE,

       Plaintiff,                          DEMAND FOR JURY TRIAL

 -vs-                                Case No.
                                     Hon.

R P M AUTO SALES, INC.,

       Defendant.

## COMPLAINT AND JURY DEMAND

### JURISDICTION

1.      This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2.      As to any supplemental claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

### PARTIES

3.      The Plaintiff to this lawsuit is Arthur Coffee who resides in Flint, Michigan in Genesee County.

4.      The Defendant to this lawsuit is R P M Auto Sales, Inc. ("RPM Auto") which is a corporation doing business in Michigan and which by statute and condition of licensing, may be served through its irrevocable resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division, Richard H. Austin Building – 3rd Floor, 430 W. Allegan Street, Lansing, MI 48918.

1

5.    At all relevant times RPM Auto -- in the ordinary course of its business -- regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which, by written agreement is payable in more than four installments and is the person to whom the transaction which is the subject of this action is initially payable.

6.    RPM Auto is a creditor under TILA, 15 U.S.C. § 1602(g) and regulation Z § 226.2(a)(17).

## VENUE

7.    The transactions and occurrences which give rise to this action occurred in Genesee County.

8.    Venue is proper in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

9.    On or about March 25, 2015, Plaintiff executed a purchase and finance agreement known as a retail installment contract  with RPM Auto for a 2004 Jeep Grand Cherokee 4WD, VIN 1J8GW68J74C129234 ("the vehicle").

10.    Prior to executing the retail installment contract, Defendant failed to provide the Plaintiff with the disclosures required by the Truth-in Lending Act in a form that he could have and keep.

11.    Prior to executing the retail installment contract, Defendant promised the Plaintiff, "Arthur, if anything goes wrong with this vehicle, I'll get it fixed for you.  You know I'll take care of you."

12.    Defendant provided a written warranty for the vehicle.

13.    Plaintiff brought the vehicle in for repairs while the warranty was still in effect and the Defendant refused to properly repair the vehicle.

14.    The Defendant's warranty failed of its essential purpose.

2

15.    Mr. Coffee purchased an extended service contract or warranty at the time he purchased the vehicle.

16.    Before executing the retail installment contract, RPM Auto made the following material representations ("material representations") which also constituted express warranties, were false, and related to the vehicle:

       a.    That the vehicle came with a 30 day warranty

       b.    That the dealer would fix whatever was defective on the vehicle.

       c.    That the vehicle was merchantable.

       d.    That the vehicle was fit for its intended purpose.

17.    RPM Auto made the following representations by operation of law as a result of the sale of a written warranty or extended service contract within 90 days of the sale of the vehicle:

       a.    That the vehicle came with a 30 day warranty

       b.    That the dealer would fix whatever was defective on the vehicle.

       c.    That the vehicle was merchantable.

       d.    That the vehicle was fit for its intended purpose.

18.    Before executing the purchase agreement, RPM Auto made the following specific representations which constituted express warranties:

       a.    That the vehicle came with a 30 day warranty

       b.    That the dealer would fix whatever was defective on the vehicle.

       c.    That the vehicle was merchantable.

       d.    That the vehicle was fit for its intended purpose.

3

19.   The vehicle did not meet RPM Auto's specific representations which constituted express warranties.

20.   RPM Auto disclaimed or limited the warranty of merchantability and fitness for use without doing so clearly and conspicuously.

21.   Mr. Coffee traded in a vehicle in order to obtain the vehicle.

22.   The vehicle constitutes a "good" under article 2 of the UCC, M.C.L. §440.2101 et seq.

23.   Since the date of purchase the vehicle has suffered from the mechanical defects which render the vehicle undriveable and unsafe for the Plaintiff, his passengers and other drivers on the road.

24.   RPM Auto had actual knowledge that the vehicle was unsafe, unfit, and unmerchantable – Defendant purchased the vehcle from a salvage yard, sold it to another consumer who could not make payments because the vehicle would not function and was unsafe, repossessed the vehicle and then sold it to Plaintiff. Upon information and belief, Defendant continues to collect an exorbitant amount from the prior owner.

25.   Each time Mr. Coffee learned of a mechanical defect, he promptly notified RPM Auto of that defect.

26.   Based on the frequency of breakdown, the vehicle's time out of service, the severity of the mechanical failures, the cost of warranty coverage, and amount of other expenses incurred during the limited time of ownership of the vehicle, the vehicle has been rendered unmerchantable, unfit, and of diminished value to Mr. Coffee.

27.   The value of the vehicle as delivered to Mr. Coffee was less than the value as warranted.

28.   Mr. Coffee properly rescinded, canceled, or otherwise terminated the contract of sale,

thereby requiring RPM Auto to return of all payments for the vehicle, cancel the security interest in the vehicle, and return the motor vehicle retail instalment sales contract.

29.    On July 14, 2015, RPM Auto obtained the Plaintiff's consumer report with no permissible purpose; this "hard pull" in the absence of any credit extension, lowered the Plaintiff's credit score.

## COUNT I -- Truth In Lending Act (RPM Auto)

30.    Mr. Coffee incorporates the preceding allegations by reference.

31.    By failing to provide Mr. Coffee with a copy of truth in lending disclosures at the time and in the manner prescribed by Regulation Z of the Truth in Lending Act, the dealer has violated the federal Truth in Lending Act, 15 U.S.C. § 1601.

32.    RPM Auto failed to accurately disclose the applicable finance charge as required by 15 U.S.C. § 1638 and Reg Z § 226.18(d)

33.    RPM Auto failed to accurately disclose and itemize the amount financed in violation of 15 U.S.C. § 1638, Reg Z § 226.18(b), and Reg Z § 226.18(c).

34.    As a consequence of failing to accurately state the actual finance charge, RPM Auto also misstated the applicable "APR" in violation of 15 U.S.C. § 1338 and Reg Z § 226.18(e).

35.    RPM Auto failed to accurately disclose the applicable "APR" as required by 15 U.S.C. § 1638; Reg Z § 226.18(32); Reg Z § 226.22.

36.    RPM Auto was required to make the disclosures required by 16 U.S.C. § 1638 prior to failed to prior to consummating the sale of the vehicle.

37.    Those disclosures were required to be made in writing, in form that could be kept by the consumer so that consumers may shop for credit prior to engaging in a credit transaction.

38. RPM Auto failed to make those disclosures in a timely fashion in violation of 15 U.S.C. § 1638(a)(4).

39. RPM Auto is liable to plaintiff for actual and statutory damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

## COUNT II -- Fair Credit Reporting Act (RPM Auto)

40. Mr. Coffee incorporates the preceding allegations by reference.

41. Defendant used and obtained the Plaintiff's consumer report without a permissible purpose.

42. Defendant had no permissible purpose to perform a hard pull of Plaintiff's credit report.

43. Defendant falsely certified to one or more credit bureaus the purpose for which it used and obtained the Plaintiff's consumer report.

44. Plaintiff suffered damages as a result of the Defendant's impermissible access to his credit report.

## COUNT III -- Magnuson-Moss Warranty Act (RPM Auto)

45. Mr. Coffee incorporates the preceding allegations by reference.

46. Coffee is a consumer as defined in 15 U.S.C. §2301(3).

47. RPM Auto is a supplier and warrantor as defined in 15 U.S.C. §230 1(4)(5).

48. At the time RPM Auto sold the vehicle to Mr. Coffee , RPM Auto also sold a service contract to Mr. Coffee .

49. The predominant purpose of the transaction in which RPM Auto sold the vehicle and service contract to Mr. Coffee  was one for sale of goods, namely a car.

50. RPM Auto was a party to the contract in which the vehicle and the service contract were sold to Mr. Coffee .

6

51.     The provision of a service contract by RPM Auto served as a basis for Mr. Coffee's confidence in the vehicle and its reliability.

52.     The provision of a service contract by RPM Auto served as a basis for the bargain between Mr. Coffee and RPM Auto in the transaction in which the vehicle was purchased.

53.     RPM Auto has attempted to disclaim the implied warranties of fitness and merchantability where it has sold a service contract within 90 days of the sale of the vehicle.

54.     RPM Auto's attempts to disclaim the implied warranties of fitness and merchantability where it has sold a service contract within 90 days of the sale of the vehicle violates 15 U.S.C. §2308.

55.     As a seller of motor vehicles, RPM Auto was obligated to comply with the FTC buyers guide rule promulgated under the Magnuson Moss Warranty Act, 15 C.F.R. 455.1 *et seq*

56.     Under the buyers guide rule, RPM Auto was required to affix the buyers guide to the car prior to the sale of the vehicle to Mr. Coffee's .

57.     RPM Auto failed to affix the buyers guide to the car prior to the sale of the vehicle to Mr. Coffee's , thereby violating the buyers guide rule.

58.     In the FTC buyers guide, RPM Auto affirmatively stated that it was giving no warranties.

59.     Under the buyers guide rule, 16 C.F.R. §455.4, RPM Auto may not make any oral representations contrary to the final terms incorporated into the buyer's guide.

60.     The oral representations made by RPM Auto are contrary to the terms stated in the buyers guide, and therefore violate 16 C.F.R. §455.4 and constitute an unfair or deceptive practice under 15 U.S.C. 2301 *et seq*.

61.   Under 15 U.S.C. §2301(a)(1), RPM Auto, must remedy any defect, malfunction or nonconformance of the subject vehicle as a warrantor of the vehicle.

62.   RPM Auto has violated 15 U.S.C. §2304(d) by failing to provide the required remedy for the failure to honor a written warranty.

63.   Mr. Coffee has suffered damages as a result of these breaches of warranty and failure to provide a remedy under 15 U.S.C. §2304(d).

64.   Mr. Coffee suffers continuing damages as a result of these breaches of warranty and failure to provide a remedy under 15 U.S.C. §2304(d).

**COUNT IV -- Violation of Michigan Consumer Protection Act (RPM Auto)**

65.   Mr. Coffee incorporates the preceding allegations by reference.

66.   RPM Auto is engaged in trade or commerce as that term is defined in M.C.L. § 445.902.

67.   RPM Auto has engaged in one or more of deceptive or unfair practices prohibited by the Michigan Consumer Protection Act, M.C.L.§ 445.903, including but not limited to the following:

a.   Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

b.   Using deceptive representations or deceptive designations of geographic origin in connection with goods or services.

c.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

8

d.   Representing that goods are new if they are deteriorated, altered, reconditioned, used, or secondhand.

e.   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

f.   Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

g.   Representing that a part, replacement, or repair service is needed when it is not.

h.   Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not.

i.   Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

j.   Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

k.   Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

l.   Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

m.   Representing that a consumer will receive goods or services "free", "without charge", or words of similar import without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions,

terms, or prerequisites to the use or retention of the goods or services advertised.

n.    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

o.    Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

p.    Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

q.    Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true.

r.    Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

s.    Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

      t.     Causing coercion and duress as the result of the time and nature of a sales presentation.

      u.     Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

68.     Mr. Coffee has suffered damages as a result of these violations of the Michigan Consumer Protection Act.

69.     Mr. Coffee suffers continuing damages as a result of these violations of the Michigan Consumer Protection Act.

## COUNT V -- Misrepresentation (RPM Auto)

70.     Mr. Coffee incorporates the preceding allegations by reference.

71.     The material representations were intended to induce the reliance of Mr. Coffee.

72.     The material representations did induce the reasonable reliance of Mr. Coffee.

73.     RPM Auto made the material representations with actual knowledge of their falsity.

74.     RPM Auto made the material representations with reckless disregard to their truth or falsity.

75.     RPM Auto made the material representations even though it should have known that they were false.

76.     These actions constitute a misrepresentation upon Mr. Coffee by RPM Auto.

77.     Mr. Coffee has suffered damages as a result of this misrepresentation.

78.     As a result of this misrepresentation, Mr. Coffee suffers continuing damages.

## COUNT VI -- Breach of Contract (RPM Auto)

79.     Mr. Coffee incorporates the preceding allegations by reference.

80.   RPM Auto's tender of the performance did not conform as a result of the vehicle's mechanical defects, lack of merchantability, or fitness for intended purpose which existed at the time of delivery.

81.   The failure of RPM Auto to deliver conforming goods, title, and follow up services at the contract price constitutes a material breach of contract.

82.   Mr. Coffee has suffered damages as a result of this breach of contract.

83.   Mr. Coffee suffers continuing damages as a result of this breach of contract.

## COUNT VII -- Breach of Warranties (RPM Auto)

84.   Mr. Coffee incorporates the preceding allegations by reference.

85.   RPM Auto has breached its warranty of merchantability.

86.   RPM Auto has breached its warranty of fitness for intended purpose.

87.   Mr. Coffee has suffered damages as a result of these breaches of warranty.

88.   Mr. Coffee suffers continuing damages as a result of these breaches of warranty.

## COUNT VIII -- Repudiation (RPM Auto)

89.   Mr. Coffee incorporates the preceding allegations by reference.

90.   There remain executory obligations relating to the purchase of the vehicle.

91.   Mr. Coffee demanded assurances of RPM Auto's performance in the demand letter sent to RPM Auto.

92.   RPM Auto failed or refused to provide assurances of its performance consistent with its obligations.

93.   RPM Auto's failure to provide assurances of its performance constituted a repudiation of its contract with Mr. Coffee.

94.    Mr. Coffee has suffered damages as a result of this repudiation.

95.    Mr. Coffee suffers continuing damages as a result of this repudiation.

### COUNT IX -- UCC Revocation Of Acceptance (RPM Auto)

96.    Mr. Coffee incorporates the preceding allegations by reference.

97.    The nonconformity of the vehicle could not have been reasonably discovered by Mr. Coffee at the time RPM Auto tendered delivery.

98.    Mr. Coffee would not have accepted the vehicle had Coffee known that the vehicle was nonconforming.

99.    RPM Auto has not made its tender of delivery conforming.

100.    Mr. Coffee sent notice of revocation within a commercially reasonable time.

101.    Mr. Coffee has suffered damages as a result of this failure to provide a conforming tender or return of purchase price after revocation of acceptance.

102.    Mr. Coffee suffers continuing damages as a result of this failure to provide a conforming tender or return of purchase price after revocation of acceptance.

### COUNT X — Motor Vehicle Sales Finance Act (RPM Auto)

103.    Mr. Coffee incorporates the preceding allegations by reference.

104.    RPM Auto failed to properly complete all necessary terms of the installment contract as required by M.C.L. §492.101 et seq.

105.    Mr. Coffee have suffered the damages set forth above by reason of the RPM Auto's violations of the MVSFA.

### COUNT XI — Motor Vehicle Installment Sales Contract Act (RPM Auto)

106.    Mr. Coffee incorporates the preceding allegations by reference.

107.   This claim is brought under the Michigan Motor Installment Sales Contract Act, M.C.L. §

566.301 *et seq*, which will be referred to as the MVISCA throughout the remainder of this

complaint.

108.   Mr. Coffee suffered damages in the amount of the finance charge imposed.

## JURY DEMAND

109.   Arthur  Coffee demands a jury trial in this case.

## REQUEST FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief:

1.    *Assume jurisdiction over this case including all supplemental claims.*

2.    *Award actual damages.*

3.    *Award treble damages.*

4.    *Award statutory and punitive damages.*

5.    *Award statutory costs and attorney fees.*

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:    s/ Adam G. Taub
       Adam G. Taub (P48703)
       Attorney for Arthur Coffee
       17200 West 10 Mile Rd. Suite 200
       Southfield, MI 48075
       Phone:  (248) 746-3790
       Email:   adamgtaub@clgplc.net

Dated: December 17, 2015

14